h STEWART, J.
Following a jury trial, Jerry Harris was found guilty of the second degree murder of David Keith Gossett, and he was given the mandatory sentence of life imprisonment at hard labor without benefits. On appeal, Harris argues that the evidence was insufficient to support his conviction. However, we find that the evidence was sufficient to support his conviction and thus affirm his conviction and sentence.
FACTS
On April 7, 1998, the body of David Keith Gossett was discovered by Kenneth Anderson at approximately 5:40 p.m. on Mansfield Road in Ouachita Parish. The Ouachita Parish Sheriffs Office was dispatched to the scene, and they began an immediate investigation. During the course of the investigation two subjects were arrested: Fredrick (“Little Freddy”) Goldston and the defendant herein, Jerry Edward Harris. Goldston was tried separately and convicted of second degree murder. Following a trial by jury, Harris was also found guilty of second degree murder. This appeal followed.
DISCUSSION

Standard of Review

The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven *1056 beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,-253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94) 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 38, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2897 (La.2/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993).
To convict an accused of second degree murder, the prosecution must prove that the defendant, acting himself or as a principal, killed a human being when the actor had a specific intent to kill or to inflict great bodily Lharm. La. R.S. 14:30.1; State v. Brooks, 407 So.2d 718 (La.1981), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The discharge of a firearm at close range and aimed at a person is indicative *1057 of a specific intent to kill or inflict great bodily harm upon that person. State v. Robinson, 32, 794 (La.App.2d Cir.3/1/00), 754 So.2d 311; State v. Stringfellow, 28,074 (La.App.2d Cir.5/8/96), 674 So.2d 1036.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.

Sufficiency of the Evidence

The defense briefed all three of its assignments in one argument. The chief complaint is that the state’s star witness, Carrie Pierce, contradicted herself on three key items. The conflicts are between pretrial statements she made in April 1998 and April 2000 as to whether (1) she did or did not see the victim with the defendant and a co-defendant[1] at the Parkview Apartments on April 7, 1998; (2) whether she did or did not see the defendant with a shotgun on that date; and (3) whether she did or did not see the defendant and his co-defendant with blood on their clothing on that date. Thus, the question raised is whether the fact finder erred in its credibility decision.
| ¡¡Carrie Pierce testified that on the day David Gossett was killed, she saw Harris in an apartment at the Parkview apartment complex. She had seen Harris earlier in the day between 4:00 and 4:30 p.m. in a red truck with the co-defendant Freddie Goldston and the victim “doing donuts in the parking lot.” They left with the victim in the truck. When Pierce later saw the truck again behind Parkview, she saw Harris jumping out of the truck with blood on his shirt and with something long in his hand that Pierce believed to be a shotgun. Pierce called Harris’ name, but he told her “don’t call his name.” Pierce identified Harris in court. She also identified a picture of the victim’s truck as the truck she had seen defendant in with the co-defendant.
On cross-examination, defense counsel compared Pierce’s current testimony with her testimony at the trial of the co-defendant, Frederick Goldston. He also discussed her prior statements to investigators. Regarding a statement given on April 21, 1998, Pierce could not remember much of what she had said. She stated that she saw the victim during the daytime, but she could not remember the time. She could not remember who she was with. She remembered that a red truck pulled into the apartments; Gold-ston, the victim and Harris were in it. She said the men did not do any donuts when the victim was in the truck. The truck left. When it returned, the victim was not in it. She did not know the victim and had not seen him before. The defendants were in the truck when it returned. It was dark when defendant Harris jumped out of the truck. In the April 21 statement, Pierce said she did not remember whether the defendant had ^anything in his hands, but he could have. In the April 21 statement, she mentioned that defendant told her not to call his name but she also said she did not know if he had a gun. However, Pierce was certain that Harris was carrying something long in a white sheet, and that he had blood on him. Pierce admitted she had used crack in the past, but she could not remember whether she was using crack on April 7,1998.
Nonetheless, on redirect, Pierce testified that there was no doubt she saw blood on Harris on the date in question and no doubt she saw him in a truck. In spite of *1058 Pierce’s lack of recollection on smaller details of her earlier statement, the jury obviously found her statements to be credible. Pierce was clear that she saw the defendant with the victim in his truck before the homicide and that she saw the defendant in the victim’s truck following the homicide running from the car with what appeared to be a shotgun in his hand and blood on his T-shirt. Her testimony provided a direct link between Gossett and the defendant. Furthermore, in his ruling denying the defense’s motion for a new trial and post judgment of acquittal, the trial judge noted that Pierce’s testimony was corroborated by the testimony of the other witnesses.
For instance, Louis Gossett, the former manager of the Monroe Piccadilly Cafeteria, testified that his son, the victim— David Gossett, worked at the cafeteria. On the day of the homicide, April 7, 1998, David left for lunch at 3:30. He did not return at 5:00 as he usually did. David owned a Chevrolet Silverado, short-bed sports truck. He gave people rides in it, but he would never let anyone else drive it; nor would he loan it to [7anyone. David, age 27, frequently went to visit a female friend, Voyce Richards, at the Getaway in the afternoon.
Voyce Richards was interviewed by the police on the date of the homicide. She testified that at that time she was employed at the Getaway Video Poker Room in Monroe. She and Gossett were friends from having worked together at Piccadilly. Richards stated that when Gossett drove into the establishment at about 3:50 p.m. on the day of his murder, there was “a black guy” in the truck with him. However, she noted that it was not unusual for him to be giving someone a ride. Richards only got a glance at the truck and its occupants because they did not stop in the parking lot, but they continued riding.
Three other Piccadilly employees testified that they knew Gossett and saw him in his truck with a black male between 4:00 5:00 on the day he was killed. Laura Adams was “in Booker T.” on Sherrouse Street when she saw the victim in his red truck at about 4:15. Angie Smith also stated that she saw the victim in his truck in Booker T. shortly after 4:00 on the day of the homicide. A short, black male also was in the truck. Cynthia Cooper testified that she saw the victim’s truck on the day of the homicide at about 4:45. She did not see who was in the truck.
Donald Abney testified he had been interviewed by the police relative to this homicide. Abney’s store, the Exxon Delta Mini Mart # 13, is “right up the street” from the Piccadilly where the victim worked. Gossett was a regular customer at the store and would normally buy sodas and a snack. Abney identified a computer printout receipt of the victim’s purchase on | ¡¡that date. Gossett usually paid with a credit card and did not have much cash. When he came to the store, sometime between 3:00 and 5:00 p.m., on the day of the homicide, he had a black male passenger with him in the truck and what appeared to be a female passenger. Abney identified a picture of the Gossett’s truck and said he had wanted to buy it. Abney had no idea who else was in the truck.
Captain Monroe Hilton of the Ouachita Parish Sheriffs office testified that he responded to the scene of the dead body call. He photographed the scene, collected evidence and assisted Deputy Renee Smith in making a video of the scene. Captain Monroe’s pictures showed various items of possible evidentiary value. The victim had a wallet and a beeper. The police took plaster casts of tire prints found in the driveway of the Old Hamp Foust school. A tooth was found several hundred yards west from the body. The police found two *1059 large blood stains near the tooth. A shotgun wad was found three days later during a search in the weeds.
Gossett’s truck was found near the Parkview apartments on the night of the homicide. Fingerprints were lifted from the truck. Captain Monroe also identified the victim’s white Dickey’s brand shirt, his tan Dickey’s brand pants and the green Piccadilly apron.
On cross, Captain Monroe said the shotgun wad was found by an inmate from the Ouachita Correctional Center who was on the work detail. The inmate just pointed it out and Captain Monroe recovered it. The finger prints from the victim’s truck did not match the defendant; the tire casts did not match the victim’s truck.
|c>Dr. Steven Hayne testified that he performed an autopsy on the victim, David Gossett. The cause of death was a shotgun wound on the right forehead traveling from front to back. This was a “distant” gunshot wound. There were two other wounds which were “potentially lethal.” One was a shot over the left side of the head with shotgun pellets striking the upper left chest. The other was a shot over the right side of the head. Both caused blood spatters, or “smearing,” which the doctor said is the new terminology. The wounds were very strongly indicative the victim was standing when the first shot hit him, i.e., he had extensive bleeding and smearing on the front of his pants and a blood flow over the front of his shirt. Gos-sett had a contact gunshot wound to the chin which produced extensive fractures of the mandible, avulsion (blow out) of the teeth and extensive soft tissue injuries of the neck. The injuries were consistent with a shot to the jawbone, then more shots as he tried to get away from the scene. Gossett had other injuries, such as scrapes and abrasions, which could be consistent with being dragged or falling while running. Falling was more likely.
The evidence, viewed in the light most favorable to the prosecution and accepting the jury’s conclusion that Carrie Pierce was credible at least as to her statements that she saw Harris with Gossett on the day he was killed, that Harris had what appeared to be a shotgun and that he later had blood on his clothes, proves beyond a reasonable doubt that defendant committed the second degree murder of Keith Gossett as charged either directly or as a principal.
hoThe evidence established that Gossett had a regular schedule. He was very attached to his truck and would not let anyone else drive it. Pierce’s testimony placed the victim with the Harris at the Parkview apartments prior to the homicide and in the Gossett’s truck following the homicide. Harris was seen to be carrying a long object, which Pierce believed was a shotgun. Gossett was killed with a shotgun. Harris was seen with blood spatters on his clothing. When Harris and Goldston returned to the apartment in the Gossett’s truck, the victim was not in the truck. Harris jumped out of the truck and told Pierce not to call his name.
The jury has decided the credibility question in favor of the witness, Pierce, in spite of deficiencies in her testimony and her lack of recollection of small details as revealed through vigorous cross examination. Having made a finding of sufficiency of the evidence, we find the trial court did not err in denying the post verdict motions dealing with sufficiency of the evidence.
CONCLUSION
Based on the foregoing, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. This court has affirmed the co-defendant's conviction and life sentence for second degree murder. State v. Goldston, 35,271 (La.App.2d Cir. 12/5/01), 804 So.2d 141.