651 So.2d 331 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Alvin WILLIAMS, Defendant-Appellant.
No. 26655-KA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
*332 Daryl Gold, Shreveport, for appellant.
Don Burkett, Dist. Atty., Richard Z. Johnson, Jr., Asst. Dist. Atty., Mansfield, for appellee.
Before NORRIS, HIGHTOWER and STEWART, JJ.
NORRIS, Judge.
Alvin Williams was charged by bill of information with distribution of cocaine, a Schedule II controlled dangerous substance. La. R.S. 40:967 A(1). He pled not guilty; the jury returned a responsive verdict of attempted distribution. La.R.S. 40:979 A; 14:27. The trial court sentenced Williams to four years imprisonment at hard labor. Williams appeals his conviction and sentence, urging six assignments of error. For the following reasons, we affirm the conviction and sentence.

Facts
From mid-November of 1992 through early January the DeSoto Parish Task Force, consisting of the DeSoto Parish Sheriff's Department and neighboring police departments from Mansfield, South Mansfield, and Logansport, instituted an undercover sting operation, known as "Operation Kid's Sake," to curb the distribution of illegal drugs in DeSoto Parish. The Task Force enlisted the help of Robert Thomas, an experienced undercover agent, and Ronnie Gilliam, also known as "the Fly," a confidential reliable informant.
On the evening of November 25, 1992, members of the Task Force met with Thomas and Gilliam at the DeSoto Parish Sheriff's Department to formalize the plan to buy crack cocaine that night from Alvin Williams. Officer Robert Davidson testified that Thomas was given $150.00 with which to make the buy and Gilliam was "patted down" for drugs; Thomas was also wired with a transmitter for audio surveillance. A Unitel receiver, operated by Officer Horace Womack and located in the surveillance van, recorded these transmissions.
The surveillance team, consisting of four members of the Task Force and lead by Officer Davidson, was the first to arrive at Williams's house in South Mansfield; Officer Davidson parked the surveillance van in a deputy's driveway across the street. Officer Davidson got out of the van and surveyed the scene through binoculars. He testified that when they arrived, he observed a "small type truck" and white Camaro parked in front of Williams's house; he also saw several people standing out front, but could not see their faces in the dark.
Within minutes Thomas and Gilliam drove up in a gray 1986 Camaro. Thomas recalled seeing a white Camaro and blue pickup truck *333 parked at Williams's house when they arrived; he also later identified the black man talking to Williams as Alvin Holloway, nicknamed "Big Nanny." Thomas gave Gilliam the $150.00; Gilliam had been instructed to buy an "eight ball" of crack cocaine, 1/8 of an ounce. Thomas, who was sitting in the driver's seat about twenty feet away from Gilliam and Williams, testified that he heard some of the conversation; he saw Gilliam give Williams the money and specifically heard Williams say he would meet him at Gilliam's grandmother's house in 15 minutes. Most of the transmissions from Thomas's wire were inaudible; however, the Unitel did pick up the location where they agreed to meet.
Officer Davidson got back in the van and quickly headed for Gilliam's grandmother's house; he parked close enough to monitor and record the conversations but not within viewing distance of the house. Thomas and Gilliam arrived and waited for Williams. About 15 minutes later, Williams and Holloway drove up in the blue pickup truck. Thomas and Gilliam walked over to get the crack cocaine. According to Thomas, Williams told Gilliam he "shorted" him, giving him $130.00 instead of $150.00 dollars; Gilliam gave him another $20.00. They also became suspicious of Thomas and discussed searching him, but never did; they stated that they would return later with instructions for a drop site where they could retrieve the crack cocaine.
According to Thomas, about an hour later Williams returned with two friends, Alvin Holloway and Rita Allen, in a white Camaro; Williams shouted out of the passenger side window that the "package" would be in V.L. Griffin's mailbox on the corner. Thomas testified that they drove to the mailbox and he retrieved the crack cocaine. Gilliam substantially corroborated Thomas's version of events.
As agreed, the surveillance team met with Thomas and Gilliam later that night at the Sheriff's Department. Officer Davidson testified that Thomas handed him the package containing the crack cocaine. The package was later transferred to the Northwest Crime Lab where analysis confirmed that the substance was crack cocaine. Williams was arrested; he pleaded not guilty to the charge of distributing cocaine. He was convicted by a jury of attempted distribution, and sentenced to four years imprisonment at hard labor as recommended by the Felony Sentencing Guidelines.
Williams appealed, assigning six errors.[1] On appeal, we will consider whether the trial court erred in (1) overruling Williams's motion for a mistrial based on a statement made by a witness about another crime; (2) overruling Williams's motion for mistrial based on a question posed by the prosecutor while cross examining Williams; and (3) imposing an excessive sentence under the Felony Sentencing Guidelines. (Briefed assignments 1, 2, and 6 respectively were renumbered herein for clarity.)

Assignment Nos. 1 and 2Trial court's failure to declare a mistrial
The ordering of a mistrial is a drastic remedy and, unless mandatory, is committed to the sound discretion of the trial judge. State v. Wingo, 457 So.2d 1159 (La.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985); State v. Burdgess, 434 So.2d 1062, 1065 (La.1983). A discretionary mistrial should be ordered only if a trial court determines that an admonition is not adequate to assure the defendant a fair trial. La.C.Cr.P. art. 771; State v. Tribbet, 415 So.2d 182, 186 (La.1982).

A. Statement No. 1
During the prosecutor's direct examination of Gilliam, the State's witness, the following colloquy took place:
Q: Did Alvin Williams ever take you to anybody's house?
A: Yeah.
Q: Whose house did Alvin Williams take you to?
A: Lt. Curtis McCoy.
Q: And who is Lt. Curtis McCoy?

*334 A: The Police Department of Mansfield.
Q: Why did Alvin Williams take you to Curtis McCoy's house?

A: It was on that first case I think, I can't remember, he just told me

R.p. 168 (emphasis added).
At this point, Williams moved for a mistrial; a bench conference was held. R.pp. 168-171. Williams argued to the trial court that the witness's answer was responsive to the prosecutor's question and referred to another crime which was otherwise inadmissible. The trial court denied the motion because (1) the district attorney's question was not designed to elicit from a lay witness information that would otherwise be inadmissible as other crimes evidence, and (2) the court saw that the jury did not react to the statement and felt that it was not prejudicial to Williams's case. Williams objected to this ruling. The court, however, noted that the testimony was irrelevant and sustained the objection insofar as it addressed the propriety of questioning about events not before the court at the present time.
On appeal, Williams argues that the comment about "that first case" is a reference to a prior charge of cocaine distribution against him which was dismissed by the district attorney during the instant trial. The statement, made by a state witness and not the district attorney, does not mandate a mistrial under La.C.Cr.P. art. 770(2); State v. Wingo, supra. Ordering a mistrial is therefore discretionary. La.C.Cr.P. art. 771(2). Factors the court may consider in determining whether a mistrial is warranted are whether the statement was (1) deliberately elicited by the district attorney, (2) responsive to the question, and (3) uttered by the witness to prejudice the defendant. State v. Perry, 420 So.2d 139 (La.1982), cert. den., 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Gene, 587 So.2d 18, 21 (La.App.2d Cir.1991), writ denied, 604 So.2d 993 (La.1992).
Upon hearing the colloquy between the district attorney and Gilliam, the trial court found, and we agree, that the district attorney did not intentionally elicit evidence of another crime. Furthermore, Gilliam's statement was not responsive to the question posed. Unsolicited and nonresponsive testimony is generally not chargeable against the state. State v. Perry, supra. Nor did Gilliam's ambiguous statement about "that first case," with no further explanation, make any clear reference to a prior charge against Williams for distributing cocaine. Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Tribbet, supra; State v. Gene, supra at 22.
Moreover, Williams himself later implied that he had committed other crimes. In one instance, he stated that he had been arrested "a whole lot of times." R.p. 333. On yet another occasion, during redirect, he voluntarily offered the following information:
Q: Alright, tell me about the nature of those phone calls?
A: The first conversation I remember thoroughly it was the nightit was the night I had been arrested, October 23rd, I called him (Robert Davidson)
Q: That was on another unrelatedon another charge, right?
A: Yes, this was the first time when they raided my house.
R.p. 348.
Under these circumstances we find, as did the trial court, that Gilliam's vague statement did not prejudice Williams. The court did not abuse its discretion in denying Williams's motion for mistrial.

B. Statement No. 2
On recross examination of Williams, the prosecutor asked the following:
Q: You stated when you came by my house that you had a belief at that time that I would uphold the law, that's what you told Mr. Gold, right?
A: Yes.
Q: Any specific incident that made you have that belief?
A: Yes.
Q: What incident was that?
A: When you threw the charges out that I was charged with.

*335 Q: And these charges weren't thrown out this time, correct?
A: Right.
Q: What does that make you think?
A: That you have been persuaded to do a job that you don't necessarily want to do.
Q: Or could it be that I believe the charges are true also, couldn't it?

R.p. 349 (emphasis added).
At this point, Williams objected. The trial court sustained the objection. Williams then moved for a mistrial on the grounds that it was improper for the prosecutor to state his opinion. La.C.Cr.P. art. 771(1). The court agreed that it was improper and found the entire line of questioning irrelevant. However, the court in its discretion did not feel it necessary to order a mistrial, and denied Williams's motion. The court instructed the prosecutor to cease this line of questioning; he complied. At no time did Williams ask for an admonition to the jury.
The prosecutor's remark, though perhaps inappropriate as noted by the trial court, did not substantially prejudice Williams so as to deny him a fair trial and thus warrant a mistrial. The prosecutor merely posed, in the form of a question, an alternative to the witness's previous response. The irrelevant comment was obviously not an unequivocal statement of opinion regarding the defendant's guilt or innocence based on the prosecutor's personal knowledge of matters not in evidence. State v. Kaufman, 304 So.2d 300, 307 (La.1974). The prosecutor ended his cross examination immediately after the objectionable question and instruction by the trial court; the defense then rested. In addition, the trial court charged the jury that statements made by the attorneys are not evidence. R.p. 337. Finally, had Williams believed that the remark might create potential prejudice, he could have requested an admonition to the jury to disregard it. La. C.Cr.P. art. 771. We find no abuse of discretion in the trial court's denial of Williams's motion for mistrial.

Assignment No. 3
By this assignment, Williams argues that the trial court imposed an excessive sentence. However, the record does not contain a motion to reconsider sentence as required by La.C.Cr.P. art. 881.1. That article precludes the state or the defendant from raising an objection to the sentence or from urging any grounds not raised in a motion to reconsider the sentence on appeal or review. Because Williams did not move for reconsideration, he is barred from attacking his sentence as excessive on appeal. State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992), writ denied, 632 So.2d 760 (La.1994); State v. Jackson, 622 So.2d 1224 (La.App.2d Cir. 1993).

Conclusion
We have examined the record for errors patent and found none. For the reasons expressed, Williams's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Assignments numbers 3, 4, and 5 were neither briefed nor argued and are therefore deemed abandoned. U.R.C.A. 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).