914 So.2d 110 (2005)
STATE of Louisiana, Appellee
v.
James L. BROOKS, Appellant.
No. 40,186-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*111 Joseph Ransdell Keene, for Appellant.
Paul Joseph Carmouche, District Attorney, Tommy Jan Johnson, Lea R. Hall, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, DREW and LOLLEY, JJ.
DREW, J.
James L. Brooks was convicted of two counts of purse snatching. Adjudicated as a second felony offender, he was sentenced on each count to 10 years hard labor, to be served consecutively. He now appeals. Advising the defendant concerning post conviction relief, we affirm the convictions and sentences.

FACTS

Count One
On January 29, 2004, Rhonda Wolfe was walking in a parking lot toward the front door of Drug Emporium on East Kings Highway in Shreveport. It was early in the evening and raining. A car quickly approached from behind and skidded to a stop. As she looked at the car, a man struck her from behind and attempted to take her purse. She gamely struggled until he grabbed her hair and pulled it painfully. She released the purse as he shoved her down and jumped into the car. She later described the assailant as a white man with a slight build who had reddish brown hair and a tattoo on his forearm.
Two men ran from the drug store to assist her. One of the men, Jacob Aguirre, an employee of Drug Emporium, testified that he:
 was inside Drug Emporium when he heard a woman scream;
 saw a man forcefully grab a woman's hair and swing her to the ground;
 saw the man take her purse and jump into a dark green Chevrolet;
 got the license plate number;
 later was asked to identify the purse snatcher from a photographic lineup and was 75 per cent sure that the defendant was the purse snatcher; and
 identified the defendant at trial, stating he was 100 per cent sure that the defendant was the perpetrator.

Count Two
On or around January 1, 2004, Donna Hansford was leaving Albertson's on Mansfield Road in Shreveport with two bags in her hand and her purse hanging on her shoulder. She noticed a car moving slowly by her. She saw a man get out of *112 the car and run toward her. She ran, but the man knocked her down and grabbed her purse. He sped away in a dark General Motors vehicle.
Hansford said she purposely did not look at the man because she was afraid he would kill her if she recognized him. She noted that he was a white male who was slender to average in size, with dark but not black hair.
The jury viewed a store security tape of still shots of the parking lot, which the victim identified as scenes from the night of the incident. It showed what she identified as her vehicle, the purse snatcher, and the dark vehicle from which he had exited. Because of the quality of the tape, she could only discern the build and hair coloring of the perpetrator, but not his identity.

Trial Chronology
Both victims testified as trial, as did Mr. Aguirre, the eyewitness to the first incident. Three peace officers testified, including Detective Mike McConnell, who explained the circumstances surrounding the photographic lineup as well as the audiotape containing the defendant's confession. After a hearing on whether or not the confession was made freely and voluntarily, the tape was admitted and played for the jury.

ISSUES AND REASONING

Denial of Continuance
On the day of trial, Brooks said he was ill and moved for a continuance, which was denied by the court, though the trial was recessed until the afternoon.
Art. 707. Motion for continuance; time for filing
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
Art. 711. Trial of motion
A motion for continuance, unless consented to, shall be tried summarily and contradictorily with the adverse party.
Art. 712. Discretionary grounds
A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.
Although La. C. Cr. P. art. 707 states that a motion for continuance is to be in writing, our jurisprudence has held that in extenuating circumstances, an oral motion is sufficient. See State v. Washington, 407 So.2d 1138 (La.1981); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
There are no medical reports before us, nor anything to prove that Brooks was ill. The record shows that the defendant's temperature was 98.6 degrees on the day of trial.
In State v. Karno, 342 So.2d 219 (La.1977),[1] the Louisiana Supreme Court stated that the trial court is given broad discretion in determining whether or not a defendant is too ill to go to trial and set out these guidelines for the trial court:
(1) Medical reports and judgments  The threshold questions are whether the accused is indeed suffering from the disability complained of and whether there is a high risk that forcing the accused to *113 stand trial would seriously endanger his health and/or prevent him from effectively participating in his defense.
(2) Evidence of defendant's activities during the period of illness;
(3) Possible availability of measures to minimize the risk to defendant's health in subjecting him to trial;
(4) Whether the accused will be better able to stand trial at a later date;
(5) The degree of injury to the public interest deemed to result from delay or the total preclusion of a trial;
(6) The effect of defendant's physical condition on his constitutional rights; and
(7) The presumption of innocence.
In State v. Carter, 363 So.2d 893 (La.1978), the defendant's attorney sought a continuance on the grounds that the defendant was at the hospital. The trial judge called the hospital and learned that the defendant was not going to be admitted. The defendant came to the courthouse, complaining of a bleeding ulcer, and during the hearing on the continuance, he slumped over. The trial court had a doctor examine the defendant, and the doctor found the defendant could stand trial if he maintained a proper diet. Carter was denied a continuance.
Here, there is nothing to show that the trial court erred in not having a physician examine Brooks. The trial judge allowed the defense attorney an opportunity to show that the defendant was ill and made his own observations. It was well within the court's discretion to observe the defendant and consider the fact that he had no fever. There is no medical testimony in the record to explain what, if anything, was wrong with the defendant. Further, the appellant has not shown any prejudice resulting from the denial of the continuance.
In State v. Castleberry, XXXX-XXXX (La.4/13/99), 758 So.2d 749, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999), the Louisiana Supreme Court provided this insight to the problem:
The trial court has great discretion in deciding whether to grant a motion for continuance, and this decision will not be disturbed on appeal in the absence of an abuse of that discretion. Even when an abuse of discretion is shown, this Court typically declines to reverse a conviction based on denial of a continuance absent a showing of specific prejudice.
(Internal citations omitted.)
The record does not indicate any worsening of appellant's condition during the trial. The defendant's lawyer advised that his client was under stress. Anyone looking at two counts of purse snatching would be under stress. Also, immediately after this motion was denied, the defense counsel sought a bench trial instead of a jury trial, stating that the defendant had specifically communicated this request to him. This leads to a conclusion that, despite any alleged physical malady, Brooks was able to communicate with his attorney and participate in his defense. We discern no prejudice here.

Other Crimes Evidence
A detective testified that Brooks was "already incarcerated" when the detective attempted to execute the arrest warrant. The defendant argues that under La. C. Cr. P. art. 770, when a judge, district attorney, or other court official makes a comment regarding a prior crime, a defendant is entitled to a mistrial, reasoning the police officer is "an experienced agent" of the state and that the trial court should have given the jury an admonition, since actual prejudice is presumed.
Counsel objected to the remark but made no request on the record for an *114 admonition or mistrial. After an unrecorded bench conference, the trial resumed, without the trial court ruling on the objection.
La. C. Cr. P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
....
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The relevant portion of La. C. Cr. P. art. 771 states:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
....
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
While a mistrial is mandatory when a judge, district attorney, or court official refers to inadmissible other crimes evidence in the presence of the jury, our jurisprudence has held that a police officer is not a "court official." See State v. Carter, 412 So.2d 540 (La.1982); State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), writ denied, 604 So.2d 993 (La.1992).
When a police officer makes such a reference, factors which may be considered in determining whether a mistrial is warranted are whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant. State v. Parker, 27,417 (La.App.2d Cir.9/27/95), 661 So.2d 603, writ denied, 95-2576 (La.2/16/96), 667 So.2d 1049; State v. Williams, 26,655 (La.App.2d Cir.3/1/95), 651 So.2d 331, writ denied, 95-0777 (La.9/15/95), 660 So.2d 448. Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Williams, supra; State v. Gene, supra.
The record shows that the following colloquy took place between the assistant district attorney and the officer:
Q. All right. And what does that entitle you to do if the judge signs off on it?
A. It can be executed any day, any time. It's good until it's executed, there's no limit on it. And in this case, it just so happens that I found out that Mr. Brooks was already *115 incarcerated. He had been incarcerated several days
Mr. Kircus: Judge, I severely object. May we approach?
After an unrecorded bench conference, the prosecutor simply moved on to another question, with no request for admonition or mistrial, nor any specific ruling by the trial court.
In State v. Grant, 531 So.2d 1121 (La.App. 4th Cir.1988), writ denied, 567 So.2d 1117 (La.1990), the court stated:
When a defendant objects to improper remarks and the objection is overruled, the defendant is not required to move for an admonition or a mistrial to preserve his rights on appeal. When a defendant's objection is sustained, however, and the court is presumably willing to give him whatever relief to which he is entitled, there is no reason defendant should not be required to request an admonition or mistrial, if he wants one. Defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied an admonition to disregard or a mistrial.
(Internal citations omitted.)
The somewhat innocuous response by the detective was not a direct reference to another crime committed or alleged to have been committed by the defendant. There is no pattern of similar attempts by any state witness. We sniff nothing here indicating that the detective intended to unfairly prejudice Brooks. The objection was made before the elicitation of any further testimony regarding why the defendant was already in jail.
In State v. Scott, 34,949 (La.App.2d Cir.1/25/02), 823 So.2d 960, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1122, this court found that a similar reference to a person being in jail did not merit an admonition although that trial court had offered to give one. We further stated in Scott:
In general, a law enforcement officer's unsolicited, unresponsive reference to another crime by the defendant is not the comment of a "court official" under the provisions of La.C.Cr.P. art. 770. Because a law enforcement officer is neither a judge, prosecutor, nor court official, La.C.Cr.P. art. 770 does not apply under these circumstances. Absent a showing of a pattern of unresponsive answers or improper intent by the law enforcement officer or prosecutor, such comments would not fall within the purview of mistrial pursuant to La.C.Cr.P. art. 771.
(Internal citations omitted.)
Here, the court did not err in allowing the trial to resume without an admonishment. Even if the trial court had erred on this point, the mistake would be subject to a harmless error analysis.
Overwhelming evidence included the appellant's taped confession to each purse snatching, along with positive eyewitness identification testimony.

Error Patent
At sentencing, the trial court did not advise the defendant of the time period within which to apply for post-conviction relief. The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of the limitation period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189. The trial court should have advised defendant, and we now advise him by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it *116 is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C. Cr. P. arts. 914 or 922.

DECREE
We AFFIRM the convictions and sentences, advising the defendant on his delays in which to seek post-conviction relief.
NOTES
[1] The illness suffered by Karno is not revealed in the opinion.