STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 09-583


STATE OF LOUISIANA

VERSUS

OTERREL JOSEPH BOUTTE


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR98989
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


SHANNON J. GREMILLION
JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.

**AFFIRMED.**


**Michael Harson**
**District Attorney, 15th JDC**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**William Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
**Oterrel J. Boutte**

**GREMILLION, Judge.**

_____The Defendant, Oterrel Joseph Boutte, was convicted of monetary instrument abuse, in violation of La.R.S. 14:72.2 and was ordered to serve ten years at hard labor. Defendant is now before this court asserting three assignments of error. Defendant contends there is insufficient evidence to prove the offense of monetary instrument abuse beyond a reasonable doubt, the trial court erred in denying his motion for mistrial, and the sentence imposed is excessive for this offender and this offense. We affirm.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, Defendant contends there was insufficient evidence to prove his guilt for the offense of monetary instrument abuse beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence to support a conviction . . ., an appellate court in Louisiana is controlled by the standard of review adjudged by the United States Supreme Court in _Jackson v. Virginia_, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),
>
> > "[T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." _State v. Captville_, 448 So.2d 676, 678 (La.1984).

_State v. Desoto_, 07-1804, p. 7 (La. 3/17/09), 6 So.3d 141, 146.

Louisiana Revised Statute 14:72.2(B) provides, in pertinent part:

> Whoever makes, issues, possesses, sells, or otherwise transfers an implement designed for or particularly suited for making a counterfeit or forged monetary instrument with the intent to deceive a person shall be fined not more than one million dollars but not less than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years but not less than six months, or both.

Captain Ted Vincent testified that he received a tip from Crime Stoppers on

1

March 25, 2003. The tip consisted of information regarding someone at a local motel making counterfeit checks. It included the motel room number and information that the person was wanted by the sheriff's office.

Captain Vincent went to the Super 8 Motel in Lafayette, Louisiana. He knocked on the door of room 311. There was no response, but Captain Vincent heard someone inside the room. Captain Vincent entered the adjacent room and "could see someone from 311 had jumped out the window." Captain Vincent did not see the person. He then entered the room.

Once inside the room, Captain Vincent found a Louisiana identification card belonging to Defendant and clothes with a dry cleaning ticket in the name of Defendant. It appeared that more than one person had been occupying the room, and it was registered to someone other than Defendant.

Sergeant Keith Gremillion testified that when he entered room 311, he observed a computer with the image of a check on the screen. The evidence taken from the scene also includes check-writing software entitled "VersaCheck." There were several printers in the room and "check stocks" from a business named P.B.W.

Sergeant Gremillion also found a Social Security Administration identification card issued to Edith M. Johnson, an envelope addressed to Joe Lewis, and a flyer from Bank One addressed to Edith Johnson. Sergeant Gremillion testified that Edith Johnson is Defendant's mother and Joe Lewis is his step-father. Sergeant Gremillion further confirmed that dry cleaning tags and receipts and a Louisiana identification card, all bearing Defendant's name, were found inside the motel room.

Sergeant Gremillion interviewed Defendant in April 2003. During that interview, Defendant denied he was the person who jumped out the window of room

2

311. Defendant stated the stolen computer in the room "was for" a guy named Jazzy. Jazzy's computer was in the room because he pawned it to Defendant for crack. Defendant told Sergeant Gremillion that faked checks were being made on the computer, and that he had even seen Jazzy make them.

Defendant denied that he created any of the checks found in the room and stated that Jazzy created them. When asked how the check made out to Joe Lewis got into the room, Defendant responded as follows:

> Uh, like I told you, the other dude Jazzy would give me the money he made while I stayed to get an account. Maybe we should have taken him yesterday, but, you know, he gave me money to give him the account. I got him an account. You know, he did his thing and I was supposed to bring a check back. I just never had a chance to. And basically that's what it was about.

Defendant further stated that Jazzy wanted a copy of the check to put in the computer. Defendant indicated that was the only check he gave to Jazzy.

Sergeant Gremillion testified that he never found Jazzy. Sergeant Gremillion further testified that persons other than Defendant negotiated checks. However, he agreed that "most roads lead to" Defendant. He stated there was no way to tell who had been using the computer and creating the checks.

Police also arrested Tyrus Breaux, whose name the motel room was in, because checks were being made out to him. Breaux told Sergeant Gremillion that he left the motel room at 6:30 a.m. on the date in question and Defendant and two other people were still there. Sergeant Gremillion admitted that he never asked Defendant the last day he stayed at the motel.

John Lowrance, the owner of Wetco formerly known as P.B.W., testified that Joe Lewis worked for him in March of 2003. Lowrance testified that State's Exhibit 4 was a payroll check he made out to Lewis. The check to Lewis was reissued because

3

Lewis told Lowrance he had never received the check.

Lowrance did not recognize a company check made out to Celest Meche, as he had never employed anyone by that name. Lowrance testified the check was not produced by him and he had never produced checks like the Celest Meche check. Lowrance further testified that Defendant did not have permission to write checks for the company.

Defendant contends the only evidence of a connection between himself and the computer was his statement that Jazzy pawned it to him in exchange for drugs. Further, he argues the State failed to prove he possessed the computer and printers or that the used them for counterfeiting purposes.

Defendant further contends the State failed to prove the implement was designed for, or particularly suited for, making a counterfeit or a forged monetary instrument. Defendant asserts the alleged implement was a computer and the legislature never intended to prohibit the possession of computers as a counterfeiting tool. Defendant further argues that the State failed to prove the computer and printers were designed or particularly suited for counterfeiting activities. Defendant asserts the State attempted to proceed on the theory that "the manner in which it was used" rendered its possession illegal. However, the legislature did not include the "manner used" language in the statute. Lastly, Defendant asserts the State failed to show he possessed the implements with intent to deceive. The State never showed Defendant possessed the computer for any other reason than he had taken the computer from Jazzy as payment for drugs.

Defendant asserts the State relied on the use of the computer as an implement designed for, or particularly suited for. making a counterfeit or forged monetary

4

instrument. The State asserted, in its closing argument:

> Without a check, a template, could this have happened? Well, I don't believe so, at least as it involves PBW because without the real check and the account, how is he going to make the other checks? How is he going to make a check made out to Celeste Meche without Joe Lewis' check?
>
> The evidence is there. It's right in front of you. The defendant admitted everything himself. He is the person that made this possible. It was his computer by his own admission that is making checks. Jazzy is making checks. He admitted, "My computer was making checks." And on top of that, he was helping make checks because he was giving him the check that was being used to make checks.

No Louisiana case has addressed the meaning of the term "implement," but federal jurisprudence has addressed the issue. In *U.S. v. Holloman*, 981 F.2d 690 (3d Cir.1992), *cert. denied*, 509 U.S. 907, 113 S.Ct. 3002 (1993), the defendant argued that cancelled checks in his possession were not implements falling within the statutory language of 18 U.S.C. § 513(b), which states:

> Whoever makes, receives, possesses, sells or otherwise transfers an implement designed for or particularly suited for making a counterfeit or forged security with the intent that it be so used shall be punished by a fine under this title or by imprisonment for not more than ten years, or both.

The court noted there was nothing to suggest that a cancelled check bearing particularly useful information may not be an implement of counterfeiting or forgery. The court noted the statute included language covering an implement designed for and an implement particularly suited for making a counterfeit or forgery. The court went on to find that the cancelled check was particularly suited for making a counterfeit or forgery in the hands of someone like the defendant. In *U.S. v. Wade*, 266 F.3d 574 (6th Cir. 2001), *cert. denied*, 535 U.S. 964, 122 S.Ct. 1381 (2002), the court found that checks without signatures were implements under 18 U.S.C. § 513(b). Clearly then, the State proved Defendant committed monetary instrument abuse by providing Jazzy

with, or possessing checks to use as, a template to create counterfeit checks.

Defendant challenges the notion that a computer may also be considered an implement under the language of the statute. After all, as Defendant notes in brief, "to prohibit the possession of computers. . . would criminalize the behavior of most citizens in today's technological world." Defendant misses the point by discussing a computers in general as opposed to discussing this one in particular. The computer at issue had with it software that was designed for, and particularly suited for, producing checks. Furthermore, Defendant, himself, admitted that counterfeit checks had been produced from that computer. He had seen it himself. So, was this computer, with accompanying printers and software, "particularly suited" to produce the counterfeit instruments found with it? Certainly. Otherwise, "Jazzy" would have been unable to produce them while Defendant looked on. For theses reasons, this assignment of error lacks merit.

**MISTRIAL**

In his second assignment of error, Defendant contends the trial court erred in denying his motion for mistrial.

Defendant asserts that Captain Vincent testified that the anonymous tip from Crime Stoppers indicated that a person wanted by the Lafayette police was in room 311. Defendant asserts the testimony regarding the warrant placed the jury on notice that someone had allegedly committed other crimes. Defendant moved for a mistrial, but the trial court ruled it was not necessary since Sergeant Vincent had not identified Defendant as the person who had an outstanding warrant, making the request premature.

Defendant contends that Sergeant Gremillion later identified Defendant as the

6

person with the bench warrant. Defendant asserts that this testimony removed all doubt as to the identity of the wanted person and the only inference to be drawn was that he had committed "prior other crimes."

> While a mistrial is mandatory when a judge, district attorney, or court official refers to inadmissible other crimes evidence in the presence of the jury, our jurisprudence has held that a police officer is not a "court official." *See State v. Carter*, 412 So.2d 540 (La.1982); *State v. Gene*, 587 So.2d 18 (La.App. 2d Cir.1991), *writ denied*, 604 So.2d 993 (La.1992).
>
> When a police officer makes such a reference, factors which may be considered in determining whether a mistrial is warranted are whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant. *State v. Parker*, 27,417 (La.App.2d Cir.9/27/95), 661 So.2d 603, *writ denied*, 95-2576 (La.2/16/96), 667 So.2d 1049; *State v. Williams*, 26,655 (La.App.2d Cir.3/1/95), 651 So.2d 331, *writ denied*, 95-0777 (La.9/15/95), 660 So.2d 448. Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. *State v. Williams*, *supra*; *State v. Gene*, *supra*.

*State v. Brooks*, 40,186, p. 7 (La.App. 2 Cir. 10/26/05), 914 So.2d 110, 114.

During Captain Vincent's testimony, he stated: "That tip was consistent with information in regards to someone making counterfeit checks at a local motel. They gave the specific room number as well as information that he was presently wanted by the Sheriff's office." At that time, defense counsel moved for a mistrial, asserting Captain Vincent's response indicated there was an outstanding warrant for Defendant. The trial court denied the motion, finding Captain Vincent had not given the name of the person with the outstanding warrant. The trial court instructed defense counsel that it was giving him the opportunity to later seek an admonishment if he chose to do so. Defense counsel then indicated he did not wish for the trial court to do so.

In *State v. Bridgewater*, 00-1529 (La. 1/15/02), 823 So.2d 877, *cert. denied*, 537 U.S. 1227, 123 S.Ct. 1266 (2003), the supreme court found that a 911 caller's

7

statement that "two [unidentified] blacks had committed some robberies in the area," did not refer to any specific crime committed by the defendant but merely referenced the caller's personal knowledge of recent robberies committed in her neighborhood by two unidentified African-American males. Further, this ambiguous reference did not render it impossible for the defendant to obtain a fair trial.

As in *Bridgewater*, the trial court properly denied the motion for mistrial, as Captain Vincent did not testify that the outstanding warrant was for Defendant and his testimony would be considered an ambiguous reference, which did not deprive Defendant of a fair trial.

During the taking of Defendant's statement, Sergeant Gremillion asked the following question:

> Oterrel, what I'm going to do is I'm going to talk about an incident that happened on March 26, 2003. It occurred at Super 8 Motel in Room 311. Myself and several officers went in reference to a complaint we had about some counterfeit checks being produced from that room and also that you were staying there at the time. It was determined that there were some bench warrants issued for your arrest. The officers knocked on the door and someone jumped out of the window. Was that you that jumped out of the window?

At the time this testimony was given, defense counsel did not object. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. Thus, Defendant may not now complain about this testimony. La.Code Crim.P. art. 841(A); *State v. Willis*, 05-218, (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006).

For these reasons, this assignment of error lacks merit.

**EXCESSIVE SENTENCE**

In his third assignment of error, Defendant contends the sentence imposed is

8

excessive for this offender and this offense. In this assignment of error, Defendant attacks the excessiveness of the habitual offender sentence imposed for the underlying conviction of monetary instrument abuse. This assignment is mooted by our ruling in appellate docket number 09-404, wherein we vacated the sentence and remanded the matter to the trial court for a new habitual offender adjudication.

## DECREE

Defendant's conviction is affirmed.

**AFFIRMED.**

9