674 So.2d 1036 (1996)
STATE of Louisiana, Appellee,
v.
Tony D. STRINGFELLOW, Appellant.
No. 28074-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1996.
Rehearing Denied June 20, 1996.
*1037 Truett West, Farmerville, for Appellant.
Richard Ieyoub, Attorney General, Robert Levy, District Attorney, A. Shawn Alford, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
BROWN, Judge.
Claiming the state failed to prove that he did not act in self defense, defendant, Tony Stringfellow, appeals his conviction for second degree murder. We affirm.

FACTS
Tony Stringfellow shot and killed Charles Curry on the night of March 13, 1994. Curry was at the apartment of LaTonya Bolden in Bernice, Louisiana. Although the events leading up to the shooting are generally undisputed, the circumstances prevailing at the moment the shooting occurred are controverted.
Stringfellow spent the afternoon of March 13 in the company of Terrance Winters, *1038 Laketa Murray, Lolita Johnson, and brothers Perry and Stanley Jackson. The group congregated at the Jackson's home in Farmerville, Louisiana. When Laketa and Lolita asked to be taken to their homes in Bernice, the group left in Winters' car and drove to Bernice where it was decided that they would visit Lolita's sister, LaTonya Bolden.
LaTonya, age 21, had just moved to an apartment in Bernice with her baby. Perry Jackson was romantically interested in LaTonya. Arriving at the apartment, the Farmerville group found LaTonya with three young men from Homer, Louisiana; Myron Allen, Antonio Harris, and Charles Curry. LaTonya was dating Charles Curry and the Homer group had spent the weekend helping LaTonya settle into her new apartment.
When the three women moved to the rear of the apartment to talk in private, the men went outside. The men from Homer left first. As the Farmerville group went out, Antonio Harris punched Perry Jackson in the mouth. The blow was unexpected and seemingly unprovoked. The single punch split Harris's lip and may have broken his teeth. As the Farmerville men moved in to assist Jackson, Myron Allen produced a Tec-9 semi-automatic pistol. Hearing the commotion outside, LaTonya feared that she might be evicted from her new apartment. Accordingly, she asked the Farmerville group to leave.
Stringfellow, Winters and the Jackson brothers took Laketa and Lolita home and then returned to Farmerville. The group drove to Stringfellow's house where he got a 12 gauge pump-action shotgun. Terrance Winters supplied two number-four buckshot shells. The group picked up a third Jackson brother, Phillip Jackson, and returned to LaTonya's apartment.
While Perry, Phillip, and Terrance stayed in the car, defendant and Stanley Jackson approached the apartment door. Stringfellow carried the shotgun. Defendant knocked on the apartment door and made himself known. LaTonya's 14 year old sister, Destiny Brown, opened the door. Charles Curry, who had been in bed with LaTonya, heard defendant's voice and walked into a hallway. At this point, the testimony widely differs as to what occurred. According to Destiny, when Curry saw Stringfellow, he turned to run. Stringfellow fired a single round striking Curry in his right hip and pelvic area. Stringfellow and Stanley Jackson ran to the waiting car and sped away.
Curry later died at the hospital. Defendant and his group hid the shotgun in the nearby town of Spearsville, Louisiana and returned to Farmerville. As they approached Stringfellow's house, the group observed police vehicles parked in the driveway. Fearing apprehension, the group drove to the home of defendant's aunt. The aunt persuaded defendant to surrender to the police. Stringfellow initially attempted to mislead authorities by recounting a fictitious alibi concocted by the getaway car occupants. Defendant later admitted to shooting Curry, but claimed that he fired only in self defense after Curry produced a gun and attempted to fire first. Stringfellow was indicted and ultimately convicted of second degree murder. Defendant's motion for new trial, based on alleged prejudice stemming from the inconsistent testimony of a witness, was denied. This appeal follows.

DISCUSSION
The substance of defendant's argument is an attack on the sufficiency of the evidence.[1] The preferable procedural vehicle for raising the issue of sufficiency of the evidence is by a motion in the trial court for post-verdict judgment of acquittal. LSA-C.Cr.P. Art. 821. Defendant did not present the sufficiency issue to the trial court, but raises it on appeal arguing that the evidence presented by the state was insufficient to prove beyond a reasonable doubt that the *1039 homicide was not committed in self-defense. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Second degree murder is defined in part as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A)(1). To support a conviction of second degree murder, the state must show that defendant had specific intent to kill or inflict great bodily harm. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or his failure to act. LSA-R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990), and reh'g denied, 495 U.S. 966, 110 S.Ct. 2579, 109 L.Ed.2d 761 (1990).
A homicide is justified when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. LSA-R.S. 14:20(1). A defendant who raises self-defense as justification for his act does not have the burden of proof on that issue. Because of its burden to prove a criminal act, the state must show beyond a reasonable doubt that there was no justification or self-defense. State v. Harvey, 26,613 (La.App. 2d Cir. 01/25/95), 649 So.2d 783.
In addition to the basic facts recounted above, Stringfellow provided the following details in his statement to police and in his testimony at trial. The Farmerville group had encountered the young men from Homer on several occasions while visiting LaTonya. Competing affections for LaTonya had led to aggressive posturing between the groups, including the brandishing of weapons by the Homer group. During the altercation in which Perry Jackson was punched, defendant claims to have seen both the Tec-9 and another nine-millimeter pistol. Although it was LaTonya who asked the Farmerville group to leave, defendant and his friends claimed to believe that she did so under pressure from Charles Curry and that they returned that night to talk to LaTonya.
Although claiming to believe the Homer group would be gone, defendant and his group armed themselves with a shotgun in case of a chance encounter. Approaching the apartment, the Farmerville group noted the absence of Charles Curry's car. The group concluded, however, that the car might be parked elsewhere and that the Homer group could be inside the apartment.[2] Accordingly, Stringfellow approached the apartment alone, armed with the shotgun. Prior to knocking, Stringfellow says he stood the gun against the wall outside the apartment door. Destiny Brown answered the door and let defendant in.
Stringfellow states that he asked to speak to LaTonya. When told that she was asleep, defendant says he asked Destiny to tell LaTonya that he had stopped by and that they needed to talk. Stanley Jackson then arrived at the door and urged defendant to come back to the car. As defendant stepped outside the door, he heard a voice behind him say "move Destiny." Defendant turned around to see Charles Curry standing inside a hallway leading to the apartment's living room. Curry was armed with the Tec-9 pistol. When Destiny moved, Curry cocked his weapon. Stringfellow grabbed his shotgun and turned toward Curry. Curry attempted to fire, but his pistol jammed. Stringfellow then "shot for the leg" and ran to the waiting car.
In his brief, defendant argues that the evidence presented casts doubts on the quality and integrity of the investigation conducted by the Bernice police department. In essence, defendant argues that although the *1040 crime-scene investigation was still underway when he first told authorities that he shot an armed man, the search for weapons in the apartment was limited to a security sweep performed by officers when they initially reached the scene of the shooting. The investigation was allegedly further tainted by the officer's reliance on statements given by eyewitnesses whom defendant characterizes as liars.
Defendant also alludes to discrepancies in the time that lapsed between the shooting and the arrival of authorities as evidence of a cover-up perpetrated by the apartment occupants. Quintrella Davis, one of LaTonya Bolden's neighbors, testified that she heard a shot on the night of March 13, 1994 and that the police arrived 45 minutes to an hour later. Another neighbor, Kathy Knighton, testified that she watched the nightly lottery number television broadcast at 9:59 P.M. on the date in question. Three or four minutes later, she heard a gunshot. A third neighbor, Dorothy Cavers, did not testify in person; however, the parties stipulated that she would have testified that she too heard a gunshot on the night of March 13, 1994 and that the police did not arrive until nearly one hour later. Stringfellow suggests that this delay allowed the apartment occupants to dispose of weapons.
In addition to Stringfellow, the jury heard the testimony of three other witnesses who were inside the apartment at the time of the shooting. Defendant's version of the shooting was not corroborated by any of these witnesses.
LaTonya Bolden testified that Charles Curry did own a Tec-9 pistol. She stated, however, that the gun had been placed in a closet earlier in the day to hide it from small children in the apartment. LaTonya stated that she was in the bedroom with Curry when she heard a knock at the apartment door. When Destiny answered, Stringfellow said that his friends had left town without him. Curry rose from the bed and entered the hallway unarmed. Bolden followed Curry and peered around the bedroom door casing into the hallway. Stringfellow and Stanley Jackson then burst through the apartment door. Jackson cried "man, you shouldn't have done it." Defendant then pumped the shotgun to load a shell into the chamber. Curry, seeing that Stringfellow was armed, turned to run just as Stringfellow shot. When defendant cycled the shotgun's action again to fire a second time, Destiny shoved him out the door. Shortly after the shooting, Destiny Brown and Judy Martin used a neighbor's telephone to notify the authorities.
Destiny Brown testified that she answered the door when Stringfellow knocked. She stated that defendant said he had been left behind by his friends. When she opened the door slightly to respond, Stanley Jackson kicked the door open saying "man, you shouldn't have done it." Stringfellow entered with the shotgun, raised it to his shoulder, and fired at Curry who was unarmed. When Stringfellow prepared to shoot a second time, Destiny says she shoved him out the door. Shortly thereafter, Destiny saw a car she knew to belong to Terrance Winters speed away under a street light. Destiny stated that she used a neighbor's telephone to call the police within two or three minutes after the shooting. The police arrived approximately ten minutes later. Although Destiny's aunt, Janet Johnson, testified that Destiny had told her that Curry was armed when he was shot, Destiny denied having made such a statement.
Judy Martin was staying the night at the Bolden apartment when the shooting occurred. She was in bed with Myron Allen when she heard a gunshot. Moments later, she saw Antonio Harris walk up the hallway carrying the Tec-9 pistol. The pistol was then placed back in the closet and was returned to Curry's mother the next morning. She insisted that Curry was unarmed when he was shot. Martin testified that she and Destiny Brown used a neighbor's telephone to call the police approximately five minutes after the shooting. The police arrived fifteen to twenty minutes later.[3]
*1041 Officer Clyde Andrews was the first to arrive at the crime scene at 10:53 P.M. A security sweep of the apartment uncovered no weapons. A spent, number-four buckshot shell was found some six feet inside the apartment doorway, suggesting that the shot was fired not from outside but from within the apartment. Officer Andrews stated that the eyewitnesses identified Stringfellow as the shooter as did the victim shortly before losing consciousness.
The evidence presented, viewed in a light favorable to the prosecution, is sufficient to prove that defendant shot Charles Curry without justification and with the specific intent to kill or inflict great bodily harm. The gunshot wound inflicted by Stringfellow induced internal bleeding which caused the death of Charles Curry. The fact that defendant fired buckshot from a shotgun at fairly close range is alone sufficient evidence of a specific intent to kill or inflict great bodily harm.[4] See State v. Wallace, 612 So.2d 183 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1253 (La.1993); State v. Ducre, 596 So.2d 1372 (La.App. 1st Cir.1992), writ denied, 600 So.2d 637 (La.1992).
Although presented with conflicting testimony, plausible evidence existed to support the jury's belief that the shooting was without justification. Defendant contended before the jury and on appeal that the state's case was based "on the shameless lies of two women who were trying to protect the fact that they let their friend bleed to death while they hid evidence from the police." This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al, 628 So.2d 27 (La.App. 2d Cir.1993); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
The testimony of the eyewitnesses was sufficient to prove beyond a reasonable doubt that the shooting was not justified as self-defense. Further, the fact that the ejected shell was found inside the apartment contradicts defendant's claim that he was outside the door when he fired. Defendant did present evidence which, if believed, supported self-defense; however, this court may not reweigh the evidence or judge the credibility of the witnesses. Our review is restricted to whether there was evidence presented which, if believed, would support the verdict; stated another way, to viewing the evidence in the light most favorable to uphold the verdict. It was the jury's responsibility to judge if the two women testifying for the state were "shameless liars." The jury assessed the credibility of the witnesses, the veracity of their testimony, and returned a verdict rationally related to the evidence presented. Defendant's assignment challenging the sufficiency of the evidence is thus without merit.
Because we find that a rational jury could reasonably conclude that the killing of Charles Curry was not justified, we pretermit Stringfellow's argument that he was not an aggressor for purposes of self-defense. For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, BROWN, WILLIAMS, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] On appeal, defendant assigns three errors. First, he asserts error in the court's refusal to declare a mistrial when four jurors admitted that they had close family members that had been murdered. Second, defendant asserts that he was prejudiced by the comments and conduct of the prosecutor during voir dire. Neither of these errors were briefed by defendant and are thus considered abandoned. In his final assignment of error, defendant contends that the verdict was contrary to the law and the evidence.
[2] Testimony adduced at trial indicated that Curry's vehicle was inoperable on the day of the shooting and that the Homer group had ridden to Bernice with Curry's cousin.
[3] Myron Allen testified he hid in a bedroom closet when the shooting began. The closet door locked behind him and Judy Martin let him out shortly thereafter. The next morning he took the pistol to Curry's mother. Antonio Harris was the only apartment occupant at the time of the shooting who did not testify.
[4] The coroner's report indicated that the wadding component of the shotshell fired at Curry had lodged in his body, thereby providing evidence of the close proximity of the shooter and his victim.