761 So.2d 528 (2000)
STATE of Louisiana
v.
Fidelis OWUNTA.
No. 99-K-1569.
Supreme Court of Louisiana.
May 26, 2000.
*529 Dwight Michael Doskey, New Orleans, Counsel for Applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jane Louise Beebe, Joseph E. Lucore, New Orleans, Counsel for Repondent.
PER CURIAM:[*]
Louisiana has long sanctioned the impeachment of a witness in criminal trials by his or her prior inconsistent statements. La.C.E. art. 607(D)(2); former La.R.S. 15:493; State v. Gabriel, 450 So.2d 611, 616 (La.1984); State v. Mosely, 360 So.2d 844, 845 (La.1978); State v. Rudolph, 332 So.2d 806, 813 (La.1976). Provided that the witness has had a fair opportunity "to admit the fact and has failed distinctly to do so," La.C.E. art. 613, extrinsic evidence of the statement is admissible, not to prove the truth of the matter asserted, i.e., not for its hearsay content, but to establish the fact of contradiction as a means of impeaching witness's general credibility. State v. Cousin, 96-2973, p. 8 (La.4/14/98), 710 So.2d 1065, 1069. In this regard, Louisiana has followed the minority rule that such prior inconsistent statements "simply do not constitute substantive evidence." State v. Allien, 366 So.2d 1308, 1311 (La. 1978); cf. California v. Green, 399 U.S. 149, 164, 90 S.Ct. 1930, 1938, 26 L.Ed.2d 489 (1970)("[T]here is little difference as far as the Constitution is concerned between permitting prior inconsistent statements to be used only for impeachment purposes, and permitting them to be used for substantive purposes as well."). We granted relator's application in this case to reverse the decision below because the court of appeal misapplied the rule excluding use of such statements for their hearsay content as a rule precluding extrinsic proof of the prior statement for any purpose, even one long recognized by Louisiana law.
In this prosecution on five counts of carnal knowledge of a juvenile in violation of La.R.S. 14:80, the centerpiece of trial became an audio tape of a confrontation arranged by the victim, Channel Williams, and her brother, Derrick, in their residence with relator two weeks before the victim reported the crimes to her mother and then to the police. In that taped conversation, the meaning of which was sharply contested at trial, the victim accused relator of the crimes and asked him whether he would provide the family with a home and a car. The core of the defense was that the tape provided evidence of an extortion plot by the victim and her brother targeting relator, a college professor who had tutored the victim at home at the request of her mother, one of relator's former students. Relator explained to jurors at trial that the charges of sexual misconduct were completely false and that he "knew they were after blackmail and extortion because they were very desperate people."
The victim and her brother denied the extortion plan and Derrick specifically denied discussing the alleged plot with his barber, Mark Fortier. The victim's older sister, Catina, who had been home at the time the confrontation between the victim *530 and relator took place, denied any knowledge that her sister and brother were trying to force relator to give them a home and a car. Catina also denied speaking about the alleged extortion plot with Fortier, a former boyfriend, and asking him to intervene. During Fortier's testimony, the trial court sustained the state's repeated hearsay objections and thereby prevented the witness from testifying with regard to statements made to him by Derrick and Catina in which, the defense claimed, they revealed their knowledge of, and in Derrick's case, participation in, a plan to extort gifts from relator. The court did allow Fortier to describe his side of his conversation with Derrick in which he warned the victim's brother that he did not know what he was doing and could get himself "in a whole lot of trouble."
The jury found relator guilty on a single count of carnal knowledge, the only count for which the state provided independent corroborating evidence placing relator's car outside the victim's residence on the afternoon of the offense. On appeal, a majority of the court of appeal panel rejected relator's argument that the trial court had improperly curtailed defense efforts to impeach Derrick and Catina, finding that the statements "were not prior inconsistent statements of the witness at hand, the barber, but of other witnesses...," and were thus properly excluded as hearsay. State v. Owunta, 98-0006, p. 8 (La.App. 4th Cir. 3/31/00), 734 So.2d 57, 61. Dissenting from that view, Judge Plotkin argued that defense counsel had provided Derrick and Catina with a fair opportunity to admit or deny making any statements to Fortier about the allege extortion plan, that the witness's denials of those conversations rendered extrinsic evidence admissible to prove the fact of the prior statements if jurors found that testimony credible, and that the trial court's rulings precluding that extrinsic evidence of those statements were not harmless because "attacking [the] victim's credibility was crucial to the defendant." Owunta, 98-0006 at 3-6, 734 So.2d at 61-62.
The record fully supports the dissenting views of Judge Plotkin. In his opening statement to the jury, defense counsel promised he would expose the prosecution of relator as the result of an unsuccessful extortion plot confected by the victim and her brother which then led to the filing of (false) criminal charges when relator ultimately refused to accede to their demands. Cross-examination of Derrick and direct examination of Catina, called as a defense witness, elicited their denials of a plan to extort money and gifts from relator and denials of having discussed the alleged extortion plot with Fortier. At that point, it was entirely proper for defense counsel to call Fortier for purposes of impeaching the siblings' testimony by establishing that Catina had asked Fortier to intervene, see La.C.E. art. 607(A)("The credibility of a witness may be attacked by any party, including the party calling him."), and that Fortier had then discussed the extortion plot with Derrick, and warned him of the potential consequences. Defense counsel offered Fortier's testimony for impeachment purposes only and made no argument that the prior statements offered substantive evidence of the alleged extortion plot because they constituted declarations against penal interest. Cf. La.C.E. art. 804(B)(3) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."). Given the limited purpose for which the defense intended to introduce evidence of the prior statements, the trial court erred in sustaining the state's hearsay objections and excluding Fortier's testimony on these points, as opposed to giving a limiting instruction to jurors regarding the proper use of the testimony. See La.C.E. art. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its *531 proper scope and instruct the jury accordingly."); State v. White, 450 So.2d 648, 651 (La.1984).
We also agree with Judge Plotkin that the trial court's rulings did not constitute harmless error. The acquittals of relator on four counts and their conviction of him on one count reflected the jurors reluctance to accept the uncorroborated testimony of either the victim or relator as to allegations of sexual abuse or of an extortion plot. While the defense could not use Fortier's testimony as substantive evidence of the extortion scheme, his testimony bore directly on the credibility of both the victim and her brother. Fortier's two prior felony convictions may have eroded his general credibility with jurors, see La. C.E. art. 609.1(B), but the victim's testimony that in the course of committing his sexual assaults relator had displayed a birthmark on his upper hip, described by her as a "big discoloration ... very noticeable," had damaged her credibility as well. After an in-chambers conference during which relator partially disrobed, the state entered into a stipulation with the defense that relator had "a small scar on his left side but no discoloration." Under these circumstances, we cannot say that beyond a reasonable doubt the trial court's rulings did not affect the jury's verdict on the remaining count. See State v. Everidge, 96-2665, p. 8 (La.12/2/97), 702 So.2d 680, 685 ("A reviewing court must find beyond a reasonable doubt that excluded evidence could not have affected the jury's verdict for the error to be harmless.") (citing State v. Sanders, 93-0001, p. 25 (La.11/20/94), 648 So.2d 1272, 1291).
Accordingly, the decision of the court of appeal is reversed, relator's conviction and sentence are vacated, and this case is remanded to the district court for further proceedings consistent with the views expressed herein.
CONVICTION AND SENTENCE REVERSED; CASE REMANDED.
NOTES
[*] Victory, J., not on panel. See La. S.Ct. Rule IV, Part II, § 3.