942 So.2d 1215 (2006)
STATE of Louisiana, Appellee
v.
Cecil C. JONES, Appellant.
No. 41,299-KA.
Court of Appeal of Louisiana, Second Circuit.
November 9, 2006.
*1220 Louisiana Appellate Project, by Sherry Watters, New Orleans, Paula Corley Marx, Lafayette, Cecil Cleo Jones, for Appellant.
Jerry L. Jones, District Attorney, John Michael Ruddick, Assistant District Attorney, for Appellee.
Before GASKINS, DREW and LOLLEY, JJ.
DREW, J.
Convicted as charged of second degree murder, Cecil C. Jones, a.k.a. Cleo Jones, appeals his conviction and sentence of life imprisonment without benefits. We affirm in all respects.

FACTS
On Saturday night, January 9, 1999, Chad Guy and his brother, Christopher Guy, were at Faces Lounge, a nightclub in Monroe. Sometime after midnight, Chad and Christopher were standing outside in front of the club when Monya Stewart, who was the girlfriend of Danny Wilson, a.k.a. "Debow," walked past Chad to re-enter the club through the front door. Chad grabbed Monya's hand and flirted with her. Monya, who was not personally offended, let Chad know that she had a boyfriend and walked back inside the club. Debow, Cecil Jones (defendant), and a young man known as "Keydo" were also standing outside the club in a location where they could see the brief exchange between Monya and Chad. While outside the club, a bouncer heard the sound of breaking bottles and saw a fight between five or six people, which prompted him to go inside the club to call the police. About a minute after Monya went back into the club, she heard a "pop." She looked outside and saw the victim on the ground in front of the club entrance.
Chad died from a single gunshot wound to his lower back. A large caliber silver-jacketed bullet was recovered from Chad's abdominal cavity during the autopsy.
Monroe Police Officer James Willis responded to the call and observed many *1221 people outside the club. The victim lay on the ground about 10 to 15 feet from the club's entrance. After calling for an ambulance, Officer Willis interviewed the victim's brother, and also recovered one (and only one) 9mm shell casing from the general vicinity of the body.
Detective Thomas Staten took photographs of the scene, and recorded statements from Monya Stewart, Carlitha Jones, Fermia Mack, and Lolitha Mitchell. Mitchell and Mack identified defendant as the shooter in their recorded statements. Both gave contradictory trial testimony (six years later) that they did not actually see defendant shoot the victim. At trial, they testified that they only told the police what they had heard.
After listening to her recorded statement at trial, Mitchell admitted telling police that when the fight was over, defendant "just came out of the blue" and started shooting the gun. Mitchell further admitted telling police that the victim was not armed. Likewise, after hearing her recorded statement at trial, Mack admitted telling police that defendant "came around and shot the boy," who did not have a gun and was not threatening anyone.
Carlitha Jones testified at trial that she did not witness the shooting, but admitted telling police in her statement (contemporaneous with the shooting) that Mitchell told her that she (Mitchell) saw defendant with a gun. She further testified at trial that after the fight began, she saw the victim's brother, Christopher, run off and return with a gun. At trial, Stewart, Jones, and Mitchell all placed defendant at the club on the night of the shooting.
There were other examples of forgetfulness or perjury at the trial.[1]
On the Monday after the shooting, Det. Staten received a telephone call from Ben Gibson, who had discovered a black 9mm Glock pistol and bullets hidden in a bag under a bed in his home. Gibson testified:
 Defendant arrived at his home on Sunday evening to spend the night, and left early Monday morning.
 Gibson had cleaned his house that week and knew that there was not a gun under the bed before defendant came to his house.
 He discovered the gun when his cigarette lighter rolled under the bed and he felt a bump under the carpet.
 He immediately called the police to retrieve the weapon.
 Nobody but defendant had been in his house that weekend.
Michael Stelly, an expert in firearm identification, performed tests and concluded that the 9mm Glock pistol found in Gibson's house fired the shell casing found outside the club on the night of the shooting and the slug recovered from the victim's body.
A warrant was issued for defendant's arrest, but the Monroe Police Department could not locate him. In January 2003, Tulsa, Oklahoma Police Officer Jeff Gatwood notified Monroe police that defendant was in their custody. While awaiting the results of a fingerprints search to determine defendant's identity, the defendant had admitted to Gatwood that:
 he was Cecil Jones from Monroe;

*1222  he was wanted for murder in Louisiana;
 he was drunk, got into a fight and pulled out his gun only because the other man pulled out his gun;
 his gun went off during a physical struggle between them; and
 the bullet struck the man in the side, killing him.

DISCUSSION
Sufficiency of evidence
Defendant argues that his conviction should be reversed because:
 no witnesses at trial identified him as the person who shot the victim, or even that he participated in the fight which led to the shooting;
 though he was at the club at the time of the shooting, the only evidence implicating him was the statement made to the Tulsa police and the gun that he allegedly left at Gibson's house;
 the state failed to meet its burden of negating the possibility of misidentification beyond a reasonable doubt;
 the out-of-court statements of the women who testified identifying him as the shooter were unreliable and should not have been admitted; and
 the state failed to meet its burden of proving that he shot the victim and that the shooting did not occur in self-defense.
Our law on sufficiency is well settled.[2]
The first of the four types of second degree murder is defined as the killing *1223 of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). To support a conviction of second degree murder, the state must prove these elements. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Stringfellow, 28,074 (La.App.2d Cir.5/8/96), 674 So.2d 1036.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or his failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Stringfellow, supra.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Brooks, 36,855 (La.App. 2d Cir.3/05/03), 839 So.2d 1075, writ denied, XXXX-XXXX (La.11/07/03), 857 So.2d 517.
Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20 A(1); State v. Cotton, 25,940 (La.App. 2d Cir.3/30/94), 634 So.2d 937. The state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Arnold, 30,282 (La.App. 2d Cir.1/21/98), 706 So.2d 578.
A rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could reasonably conclude that all of the elements of second degree murder were proved beyond a reasonable doubt. The defendant's statement alone proves his identity as the shooter of the victim. Firearm identification evidence and related expert testimony, and the facts inferred from the circumstances established by that evidence, further support the defendant's conviction of second degree murder and refute any self-defense claims. Additionally, the prior identifications made of defendant by the witnesses, Mitchell and Mack, were admissible when they claimed at trial that they could not identify the shooter.[3] We find that the state negated any reasonable probability of misidentification in carrying its burden of proof. The state met its burden of proving that the shooting was not in self-defense for the oldest reason in the world: the victim was shot in his back, slightly to the right of the backbone.
Timeliness of the prosecution
Defendant contends that the trial court erred in denying his motion to suppress based upon the state's failure to timely bring his case to trial.
La. C. Cr. P. art. 578(2) provides that no trial shall be commenced after two years *1224 from the date of institution of the prosecution in non-capital felony cases. The offense charged determines the applicable limitation.
Regarding the suspension of time limitations, La. C. Cr. P. art. 580 provides:
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.
When prescription is suspended, the relevant period is not counted toward the two-year time limitation. The suspension lasts from the time that the defendant's preliminary plea is filed until the court rules thereon. State v. Pratt, 32,302 (La.App. 2d Cir.9/22/99), 748 So.2d 25.
For purposes of Article 580, a preliminary plea is any pleading or motion filed by the defense that has the effect of delaying trial. State v. Allen, 2003-2815 (La.4/23/04), 871 So.2d 1097. Such pleadings include properly-filed motions to quash, motions to suppress, motions for a continuance, as well as applications for discovery and bills of particulars. Id.
In State v. Pratt, supra, the defendant's motion to suppress was never ruled on by the trial court; therefore, the two-year time period was suspended on the date the motion to suppress was filed, and never began to run again.
A review of the minutes in this instant case reveals the following pertinent time line for this inquiry as to timeliness:
 March 14, 2003: Indictment filed.
 August 25, 2003: Defendant filed a pro se motion to quash arrest warrant.
 November 3, 2003: Trial court ruled on motion.
 August 5, 2004: Defense counsel filed a motion to suppress confession/continuance.
 August 17, 2004: Defense counsel filed another motion to suppress confession.
 September 26, 2005: Ruling on motions to suppress, and commencement of trial on the merits.
There was a period of 164 days from March 14, 2003 (indictment filed) to August 25, 2003 (pro se motion to quash arrest warrant). Prescription was then suspended until November 3, 2003, when the trial court ruled on the motion. The prescriptive period then ran for 276 days until August 5, 2004, when defense counsel filed a motion to suppress confession/continuance. At that point, prescription had run for a total of 440 days. Prescription was then suspended until September 26, 2005, when the trial court ruled on the motions to suppress. That was also the date that the trial commenced.
The defendant's August 25, 2003, motion to quash the arrest warrant and his August 5, 2004, motion to suppress the confession/continuance were both "preliminary pleas" for the purpose of Article 580. As such, they suspended the running of the time limitation set forth in that article and the relevant periods are not counted toward the two-year time limitation. As can be seen by the above timeline, the total counted is 440 days  a total number of days obviously less than the two-year time limitation set forth in Article 578(2). Hence, the trial court correctly denied the motion to quash.
Denial of the motion to suppress defendant's Oklahoma statements
The defendant contends that his confession was involuntary and obtained in violation *1225 of his Miranda rights while he was under the influence of marijuana. At the motion to suppress, Det. Gatwood testified that he arrested defendant in a motel room during a drug task force operation. When officers knocked on the door, a co-occupant opened the door. Upon entering, the officers immediately noticed the smell of marijuana. Both defendant and the co-occupant consented to a search of the room and their persons. Upon finding a small bag of marijuana in the defendant's pants, officers arrested defendant who refused to cooperate with the officers and twice gave false identification.
Det. Gatwood testified that:
 while they were in a hallway at the Tulsa police headquarters awaiting the results of defendant's fingerprints search, defendant stated, approximately two hours after his arrest, that he was Cecil Jones;
 defendant became "real upset," started to cry, and declared that they were going to find out that he was wanted in Monroe, Louisiana, for a murder that occurred outside a nightclub;
 defendant admitted being drunk and getting into a fight with another man, and when the other man pulled a handgun, he pulled out a 9mm Glock and shot the individual in the side;
 defendant's statements were spontaneous, and not in response to any questioning or interrogation;
 he (the detective) was focused solely on determining defendant's true identity;
 prior to defendant's comments, the detective had no idea that defendant was wanted for murder in another jurisdiction;
 he did not advise defendant of his Miranda rights; and
 defendant appeared coherent during his comments.
Defendant testified at the suppression hearing that:
 he was arrested on January 7, 2003 in Tulsa and transported to the Tulsa Police Department;
 Det. Gatwood learned that there was a warrant for his arrest from another officer;
 he gave no statement to Det. Gatwood or any other officer; and
 he had three prior felony convictions.
The trial court determined that Det. Gatwood was the more credible witness. The trial court noted defendant's criminal history, and that the officer had no reason to lie to the court. Finding that defendant's statements were spontaneous and not given as the result of interrogation or compelling influence, the trial court found defendant's statements were voluntary. Further, defendant's assertion that his statements were given under the influence of marijuana was unfounded on the record submitted.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. Roddy, 33,112 (La.App. 2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La. 5/11/01), 791 So.2d 1288. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Roddy, supra.
Spontaneous and voluntary statements, not given as a result of police interrogation *1226 or compelling influence, are admissible into evidence without Miranda warnings even when the defendant is in custody. State v. Robinson, 384 So.2d 332 (La.1980); State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
Interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom or action in any significant way." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation includes words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). There is a difference between police-initiated custodial interrogation and communications, exchanges, or conversations initiated by the accused himself. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Bowers, 39,970 (La.App. 2d Cir.8/19/05), 909 So.2d 1038. Great weight is placed upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. Id. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. Id.
Through the testimony of the police officer, the state met its burden of proof by presenting credible evidence that the statements were spontaneous, voluntary, and not given as a result of police interrogation or compelling influence. As such, they are admissible into evidence without Miranda warnings even when the defendant is in custody. The police officer's testimony was sufficient to prove that the statements were made, and were given freely and voluntarily. The trial court's conclusions are supported by the evidence and will not be overturned on appeal.
Self-representation and contempt
Defendant argues that he repeatedly attempted to represent himself, and the trial court erred in failing to conduct an adequate inquiry and make a determination as to the exercise of his right to self-representation. He further complains about the trial court's admonishments not to make any more pro se filings.
The state filed a motion to supplement the record with the transcript of the proceeding in which defendant's motion to represent himself was addressed. The supplement shows that, after a detailed discussion between the trial court and defendant regarding self-representation, defendant freely chose to be represented by an attorney and instructed his attorney to withdraw the motion for self-representation.
The pertinent procedural history as regards representation of defendant follows:
 March 19, 2003: Counsel appointed to represent defendant (IDB).
 August 25, 2003: Defendant filed a pro se motion to quash arrest warrant, which was denied by the trial court in a written ruling on November 3, 2003.
 February 26, 2004: Defendant filed a pro se motion for speedy trial.

*1227  March 11, 2004: The trial court received defendant's letter asking it to accept his pro se motion.
 March 12, 2004: Defendant filed a second motion for speedy trial.
 May 20, 2004: Defense counsel filed a motion for speedy trial.
 August 5, 2004: Defense counsel filed a motion to suppress confession or, in the alternative, for a continuance.
 August 17, 2004: Defense counsel filed another motion to suppress confession.
 December 9, 2004: Defense counsel filed a motion to reduce bond.
 January 28, 2005: Defendant filed a pro se motion for reduction of bond.
 March 22, 2005: Defendant's pro se letter to the court filed into the record.
 March 22, 2005: A hearing was held on defense counsel's motion for bond reduction, which was denied, with the trial court noting that defendant had previously been cautioned not to engage in ex parte communications with the trial court and to communicate through defense counsel, but that defendant had continued to send letters to the trial court.
 May 25, 2005: Defendant's pro se writ of habeas corpus for the state's failure to institute prosecution.
 May 31, 2005: Defendant's pro se writ of habeas corpus for the state's failure to timely file bill of information/indictment.
 June 10, 2005: Defense counsel filed a motion to continue.
 June 13, 2005: Defense counsel's motion to continue was addressed in open court, and the matter was reset.
 September 13-14, 2005: Defendant's pro se motions to quash were filed.
 September 19, 2005: Defendant's pro se motions to quash were taken up and denied, with the trial court finding that the state was within its time limitations to bring the case to trial.
 September 22, 2005: Defendant filed a pro se letter with the trial court requesting a copy of his ruling on the motion to quash, and indicating he planned to "appeal" the decision.
 September 22, 2005: Defendant's pro se letter was noted by the trial court, and defendant was reminded that he had been cautioned that he cannot both represent himself and be represented by an attorney, with the trial court further noting that it had not approved defendant representing himself. After defendant repeatedly interrupted the trial court, he was sanctioned and ordered to serve 160 days in the parish jail for contempt of court, to run consecutively. Defense counsel advised the trial court he would speak to defendant, and if defendant wished to file a motion to represent himself, he would do so. Defense counsel then filed such a motion, requesting that defendant be allowed to represent himself at trial.
 September 26, 2005: Defendant's motion to represent himself at trial was withdrawn in open court, and trial commenced.
In State v. Bodley, 394 So.2d 584, 593 (La.1981), the supreme court held that "[w]hile an indigent defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative." However, the supreme court in State v. Melon, 95-2209 (La.9/22/95), 660 So.2d 466, directed lower courts to accept and consider filings from represented defendants *1228 in a pre-verdict context whenever doing so would not lead to confusion at trial. The Melon court further noted that all courts retain the discretion to grant or withhold co-counsel status, before or after verdict.
Defendant repeatedly made pro se filings despite admonitions from the court that he was already represented by counsel and had not been approved to represent himself. Even if the dictates of Melon were not followed by the trial court, the record does not show that defendant was in any way deterred by the trial court's admonitions. Defendant continued to pursue pro se relief, and some filings were adopted and supplemented by defense counsel. The defense has not argued nor shown on appeal that defendant was in any way harmed by the trial court's admonitions.
The contempt ruling was clearly made because defendant, despite warnings, repeatedly interrupted the judge, not because of the pro se filings.
Hearsay testimony
Defendant contends that the trial court erred in allowing hearsay and double hearsay testimony from Lolitha Mitchell, Fermia Mack, and Carlitha Jones.
The record reflects that on direct examination, Mitchell admitted telling police that she saw defendant shoot the victim, but testified at trial that she did not see the shooting. When she denied telling police that the victim was unarmed, a bench conference was called, the jury was removed and Mitchell's recorded statement was played to refresh her memory. Mitchell's testimony continued. No hearsay objections appear on the record.
The records shows that during direct examination, Mack testified as follows:
Mr. Ruddick: You did not say that Cleo came around and shot the boy?
Ms. Mack: No, I didn't. I said I guess he shot him.
Mr. Ruddick: Why do you say you guess he shot him?
Ms. Mack: Cause that's what I was told. That's what everybody else was saying, so, know, once you hear a story at night you go with it.
Mr. Courteau: I'm going to object to her testifying to what she heard.
Trial Court: Objection overruled. I think she was trying to explain her answer. It wasn't offered for the truth of the matter asserted but simply that it was said and therefore effected her understanding.
During direct examination of Jones, the following questioning occurred:
Mr. Ruddick: Did you tell the police that Lolitha told you that she saw Cleo shoot the boy?
Ms. Jones: Yes, that's 
Mr. Courteau: I'm going to object to hearsay.
Mr. Ruddick: Your Honor, this goes to the impeachment of the other witnesses as well as 
Trial Court: It's not  The objection is overruled. It's not hearsay because it's not being offered for the truth of the matter. It's asserted simply whether or not it was said.
Mr. Courteau: Note my objection for the record.
Trial Court: Your objection is noted.
* * *
Mr. Ruddick: All right. Did Lolitha Mitchell tell you that she had seen Cleo with a gun?

*1229 Ms. Jones: She said what 
Mr. Courteau: Object to a hearsay.
Mr. Ruddick: I'm  I  the same grounds that the prior question was asked, I'm using the same grounds this time.
Trial Court: Objection overruled.
Ms. Jones: She said what everybody else said, yeah.
After a lengthy discussion outside the presence of the jury, the tapes of the police statements by Mitchell and Jones were admitted into evidence by the state, without objection by the defense, as extrinsic evidence to attack the credibility of the witnesses. It was agreed that the tapes would not be played for the jury.
The defense notes that no single witness at trial identified defendant as the shooter. It cites applicable law and argues generally that erroneously admitted hearsay statements were made by Mitchell, Mack and Jones. The defense contends that the state did not provide any exception to the hearsay rule that would make the hearsay statements admissible. Specifically, the defense contends that under La. C. Cr. P. art. 801(D)(1)(a), the out-of-court statements are admissible solely to attack credibility and not for their assertive or substantive value. The defense further argues that such use violates defendant's right of confrontation. The defense contends that because the erroneous admission of the hearsay statements was not harmless as they were the only identity evidence presented, the conviction must be reversed and a new trial ordered.
The state notes that the defense made no objections during Mitchell's testimony and, therefore, has not preserved this alleged error for review on appeal. It summarizes the statement given by Mack and argues that the statement was not hearsay because it was offered to explain her answer to the state's question regarding what she meant by "I guess." The state also points to pertinent portions of Jones' testimony and argues that the statements were allowed for impeachment purposes under La. C.E. art. 607. The state notes that the proper procedure was followed when Jones' attention was called to the recorded statement and she was given an opportunity to acknowledge the prior statement. In the alternative, the state argues that the recorded statements are non-hearsay pursuant to La. C.E. art. 801(D)(1)(a), and that the proper procedure was followed. The state notes that the witnesses were present during trial and available for cross-examination. The state adds that additional evidence corroborates the identity of defendant as the shooter.
Hearsay is a "statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). Generally, such out-of-court statements are inadmissible. La. C.E. art. 802; State v. Logan, 36,042 (La.App. 2d Cir.6/14/02), 822 So.2d 657, writ denied, 2002-2174 (La.9/19/03), 853 So.2d 621.
If a statement is not introduced to prove the truth of the matter asserted, then that statement, by definition, is not hearsay. State v. Tate, 25,765 (La.App. 2d Cir.2/23/94), 632 So.2d 1213, writ denied, 94-1218 (La.8/23/96), 678 So.2d 33.
Before a witness's credibility may be attacked, La. C.E. art. 613 requires that the witness's attention be called to the *1230 inconsistency and the witness be given the opportunity to acknowledge the prior statement. State v. Logan, supra.
In State v. Johnson, XXXX-XXXX (La.11/3/00), 774 So.2d 79, the supreme court discussed attacking the credibility of a non-party witness through the use of prior inconsistent statements incriminating the accused. The court stated:
Assuming a proper foundation, the credibility of any witness may be attacked by extrinsic evidence, including prior inconsistent statements. La. C.E. art. 607(D). Admission of the evidence, which bears solely on the issue of credibility, turns on a judicial determination that the probative value of the extrinsic evidence is not substantially outweighed by undue consumption of time, confusion, or unfair prejudice. La. C.E. art. 607(D); State v. Owunta, 99-1569, p. 1 (La.5/26/00), 761 So.2d 528, 529; State v. Cousin, 96-2673, pp. 12-13 (La.4/14/98), 710 So.2d 1065, 1071. When a non-party witness's credibility is attacked through prior inconsistent statements incriminating the accused, the evidence is generally not admissible for its assertive value as substantive evidence of guilt. Owunta, 99-1569 at 1, 761 So.2d at 529; Cousin, 96-2673 at 8-9, 710 So.2d at 1069. An exception to this general rule exists for cases in which the witness's prior inconsistent statement also constitutes a prior statement of identification for purposes of La. C.E. art. 801(D)(1)(c), Louisiana's counterpart of Fed.R.Evid. 801(d)(1)(C). See United States v. Brink, 39 F.3d 419, 426 (3rd Cir.1994) ("If at trial the eyewitness fails to remember or denies that he made the identification, the previous statements of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect.") (quoting Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence, § 801(d)(1)(C) [01], at 801-222(1993) ); see also State v. Wright, 98-0601 (La. App. 1st Cir.2/19/99), 730 So.2d 485 (prior identification made of the defendant by the witness in his testimony before a grand jury was admissible when the witness testified at trial that he could not identify the defendant), writ denied, 99-0802 [(La.10/29/99)], 748 So.2d 1157.
State v. Johnson, XXXX-XXXX at pp. 2-3, 774 So.2d at 80-81.
A prior statement by a witness which is one of identification of a person made after perceiving the person may be used assertively, as substantive evidence of guilt, and may be established through the testimony of one to whom the statement was made, even if the witness denies making an identification or fails or is unable to make an in-court identification. State v. Tumblin, XXXX-XXXX (La. App. 4th Cir.9/17/03), 857 So.2d 1045. The failure to recall a statement constitutes a failure to distinctly admit having made it. State v. Logan, supra.
The state correctly notes that the defense failed to preserve for argument on appeal any alleged errors regarding testimony given by Mitchell because no contemporaneous objections were made on the record. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Smith, 39,698 (La.App. 2d Cir.6/29/05), 907 So.2d 192.
Furthermore, a thorough review of the record reveals that the trial court did not err in overruling the defense's *1231 hearsay objection to statements made by Mack. The record supports the finding that her statement, "That's what everybody else was saying," was not offered for the truth of the matter asserted, but to explain why she qualified her answer to the initial question with, "I guess." Since the statement was not introduced to prove the truth of the matter asserted, then that statement, by definition, is not hearsay.
Finally, Jones' testimony is the only instance in the case (that was objected to at trial) in which a prior inconsistent statement was used to impeach the witness's credibility. The record reflects that after the proper foundation was established, the credibility of this witness was attacked by her prior inconsistent statement under La. C.E. art. 607(D). However, as a non-party witness whose credibility was attacked through a prior inconsistent statement incriminating the accused, this evidence is generally not admissible for its assertive value as substantive evidence of guilt.
It is arguable that Jones' statement was a case in which an eyewitness's prior inconsistent statement was also a prior statement of identification, which under La. C.E. art. 801(D)(1)(c) can be given substantive effect. See State v. Johnson, supra. See also, State v. Tumblin, supra. However, her prior statement was that she told the police that Mitchell told her that the defendant was the shooter, and was not her prior identification "after perceiving the person," as required by La. C.E. art. 801(D)(1)(c). Hence, Jones' statement was properly admitted into evidence to attack her credibility, but the statement should not be considered as substantive evidence. Defendant's arguments are without merit.
The state's special jury instruction on the aggressor doctrine
Contending that the victim was the aggressor in approaching Stewart, defendant asserts that the trial court erred when giving a special jury instruction on the aggressor doctrine over his objection. Defendant also asserts that there was no evidence about how the fight started or that defendant was involved in the fight. Defendant notes that there was testimony that the victim's brother had a gun. The state argues that the testimony given by Mitchell and Mack after listening to their recorded statements supported the special charge regarding the aggressor doctrine.
La. C. Cr. P. art. 807 provides in pertinent part that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Regarding a claim of self-defense, La. R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
After listening to her recorded statement at trial, Mitchell admitted telling police that when the fight was over, the defendant "just came out of the blue" and started shooting the gun. She further admitted telling police that the victim was not armed. Also, after Mack listened to her recorded statement at trial, she admitted telling police that the defendant "came around and shot the boy," and the person *1232 he shot did not have a gun and was not threatening anyone. The state argues that these statements are evidence sufficient to justify the special instruction on the aggressor doctrine. However, the portions of these statements regarding lack of provocation were not related to identity and should therefore not be given substantive effect. In any event, the defendant's own statement that the shooting was in self-defense is evidence sufficient to support the special instruction. These arguments are therefore without merit.
Other crimes
Defendant argues that the trial court erred in denying the motion for mistrial based upon the evidence of other crimes that was presented to the jury. The relevant testimony concerning this issue was Det. Gatwood's testimony that: (i) he came into contact with defendant as a member of the Tulsa Police Department's special investigations division; (ii) defendant gave him two false names; and (iii) he learned that defendant was wanted for this charge (second degree murder) and a probation violation.
A review of the record reveals that the defense made only one contemporaneous objection, and that was to the last statement regarding a probation violation. The jury and witness were removed from the courtroom, and the defense made a motion for mistrial based on the reference to other crimes evidence. The state argued that a police officer is not a court official for purposes of La. C. Cr. P. art. 770, and, therefore, a mistrial is not mandatory. The defense argued that the officer had been "admonished" or warned beforehand not to refer to any prior convictions by the district attorney, but not by the court. The defense decided not to request an admonition to the jury to avoid emphasizing the other crimes evidence to the jury. The trial court denied the motion for mistrial and agreed to instruct Det. Gatwood not to make any additional references to other crimes.
The defense argues on appeal that Det. Gatwood's testimony was replete with inadmissible "other crimes" evidence, and cites the comments set forth above. It argues that the statements were attributable to the prosecutor because they were deliberately elicited when the prosecutor knew what the answer would be and intended to place the information before the jury.
The state notes the lack of contemporaneous objection to all but the one reference to a probation violation. The state argues that the prosecutor's questioning was not an attempt to elicit information about other crimes, but was aimed at setting up the sequence of events leading to defendant's arrest.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Smith, supra. Defendant failed to preserve for argument on appeal the first two described alleged errors because no contemporaneous objections were made.
Evidence of other crimes, wrongs, or acts is generally not admissible to prove the character of a person in order to show that he acted in conformity therewith. See La. C.E. art. 404(B). The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Gatti, 39,833 (La.App. 2d Cir.10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511; State v. Salter, 31,633 (La.App. 2d *1233 Cir.2/24/99), 733 So.2d 58, writ denied, 99-0990 (La.9/24/99), 747 So.2d 1114. Mistrial is a drastic remedy that is warranted only when substantial prejudice would otherwise result to the accused. State v. Cooks, 36,613 (La.App. 2d Cir.12/4/02), 833 So.2d 1034.
A mistrial is mandatory when a judge, district attorney or court official refers to inadmissible other crimes evidence in the presence of the jury. La. C. Cr. P. art. 770. For the purposes of art. 770, a police officer is not a "court official." State v. Carter, 412 So.2d 540 (La.1982); State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), writ denied, 604 So.2d 993 (La. 1992).
Factors which may be considered in determining whether a mistrial is warranted are whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant. State v. Williams, 26,655 (La.App. 2d Cir.3/1/95), 651 So.2d 331, writ denied, 95-0777 (La.9/15/95), 660 So.2d 448. Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Williams, supra; State v. Gene, supra.
The trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial when the alleged misconduct does not fit into the provisions for a mandatory mistrial, and the ruling will not be disturbed on review absent an abuse of discretion. State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
Here, as in Gatti, supra, the trial court found the officer's statement was inadvertent and did not warrant a mistrial. It does not appear that the officer intended to unfairly prejudice the defendant. There was no pattern of seeking to place before the jury inadmissible testimony about defendant's past. What the officer said does not appear to be an intentional violation of defendant's rights. Furthermore, the defense declined to have an admonition given.
Good time
Defendant argues that the trial court erred in denying him good time eligibility. La. R.S. 15:571.3 provides in pertinent part:
C. Diminution of sentence shall not be allowed an inmate in the custody of the Department of Public Safety and Corrections if:
(1) The inmate has been convicted one or more times under the laws of this state of any one or more of the following crimes:
* * *
(b) Second degree murder.
Because the defendant was convicted of second degree murder, the trial court properly noted the application of La. R.S. 15:571.3 to the defendant.

DECREE
Defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The club's bouncer testified at trial that he heard "about" two or three gunshots. However, when confronted at trial with his prior statement, contemporaneous with the shooting, that he only heard one shot, he did not deny having said this to the police on the night of the shooting.
[2] When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.

This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
[3] See discussion regarding these identifications later in this opinion.